# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

AMANDA K.,

    *Plaintiff,*

v.

FRANK BISIGNANO, Commissioner of
Social Security,

    *Defendant.*

Case No. 1:25-cv-01176-JEH-RLH

## REPORT & RECOMMENDATION

Plaintiff Amanda K. ("Amanda") filed this suit to challenge an administrative law judge's finding that she was not disabled under the Social Security Act and thus ineligible for benefits. This case has been referred for a Report & Recommendation. Because the ALJ's decision was supported by substantial evidence, the Court recommends that it be affirmed.

## LEGAL STANDARD

### I.    The Social Security Act

The Social Security Act—and the regulations adopted under it—explain in detail who is eligible to receive social security benefits. To qualify, a claimant must be sixty-five years of age, blind, or disabled. 20 C.F.R. § 416.202(a)(1)–(3). A claimant is disabled if she cannot "do any substantial gainful activity" because she suffers from "any medically determinable physical or mental impairment" that is either life-threatening or chronic. 42 U.S.C. § 423(d)(1)(A).

To implement that definition, the Social Security Administration has developed a five-step evaluation process. *See* 20 C.F.R. § 416.920(a)(1). The steps proceed sequentially:

> **Step One.** Is the claimant currently engaged in substantial gainful activity?
>
> **Step Two.** Does the claimant have a severe mental or physical impairment—i.e., an impairment that significantly limits their ability to do basic work activities—or a combination of them?
>
> **Step Three.** Does the mental or physical impairment appear on an enumerated list (called "listings")? If not, is it nonetheless medically equal to one of those listings?
>
> **RFC Assessment.** What is the claimant's residual functional capacity (RFC)—that is, the most they can still do despite their limitations?
>
> **Step Four.** Based on the claimant's RFC, can they perform their past work?
>
> **Step Five.** Based on the claimant's RFC, can they perform other work?

*See id.* § 416.920(a)(4)(i)–(v). The ALJ begins, of course, at step one. If it yields an affirmative answer (i.e., the claimant is working), the claimant is not disabled, and the inquiry ends. If step two yields a negative answer (i.e., the claimant does not have a severe impairment), the claimant is not disabled, and the inquiry ends. *See id.* §416.920(a)(4)(i)–(ii). Step three, however, is dispositive: If the claimant's impairment appears on a listing, the claimant is considered disabled and eligible for benefits. *See id.* § 416.920(a)(4)(iii). If the claimant's impairment does not appear on or medically equal a listing, the ALJ crafts an "RFC Assessment," which analyzes "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [their] impairment." *Moore v. Colvin*, 743 F.3d 1118, 1121

(7th Cir. 2014). If either steps four or five yield an affirmative answer (i.e., the claimant can perform their old job or adjust to a new one in light of the RFC), the claimant is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv)–(v).

The claimant has the burdens of production and persuasion through step four. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). At step five, the burden shifts to the Commissioner to show that the claimant can engage in some type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II.    Standard of Review

A court's function on review is limited to determining whether the ALJ's findings are supported by substantial evidence and based upon proper legal criteria. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence, in turn, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that the threshold "is not high"); *Schneck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) ("Substantial evidence may be less than the weight of the evidence, and more than a scintilla." (citation modified)). Yet, while the ALJ's decision commands deference, courts may not simply "rubber stamp" it. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

3

The Seventh Circuit has emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Instead, ALJ's need only "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review.'" *Id.* at 1054 (alteration in original) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Therefore, courts reviewing for substantial evidence may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [their] judgment for the ALJ's determination so long as substantial evidence supports" the decision under review. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). In short, the ALJ must build "an accurate and logical bridge" between the evidence in the record and his conclusions. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).

4

## BACKGROUND

### I.    Amanda

Amanda was born in 1982, (R. at 224[1]), and was awarded a bachelor's degree in biological sciences in May 2006, (R. at 45). She worked in cosmetics as a make-up artist before she stopped working in April 2022. (R. at 262.) On a function report that Amanda completed as part of her application process, she claimed that pain in her back, hips, and neck make it difficult to stand for long periods; that she requires the use of an ergonomic office chair; and that she experiences migraines two or three times per month, which requires her to lie in bed. (R. at 269.) At the hearing, Amanda testified that her stomach problems are "most detrimental" to her ability to function, as they cause constipation, nausea, and cramping. (R. at 47.)

### II.    Procedural History

Amanda filed two applications with the Social Security Administration in May 2022—one for disability insurance benefits, and the other for supplemental security income—alleging that she has been disabled since April 29, 2022. (R. at 20.) Her application was initially denied in April 2023 and denied upon reconsideration in September. (R. at 20.) She then requested a hearing before an ALJ, (R. at 20), which took place in March 2024, (R. at 38). Present at the hearing were Amanda, her attorney, and a vocational expert. (R. at 38.)

---

[1] "R." refers to the Certified Administrative Record filed on July 7, 2025. (Doc. 5.) The page numbers cited in this R&R refer to the black page numbers at the bottom right of each page of the transcript rather than the green page numbers generated automatically by CM/ECF at the top right.

5

After the hearing, the ALJ issued a written opinion concluding that Amanda was not disabled and therefore not entitled benefits. (R. at 31.) In response, Amanda sought review of the ALJ's decision with the Appeals Council, but her request was denied. (R. at 1.) Amanda then filed a complaint in this Court to challenge the ALJ's decision. (Doc. 1.) She filed her brief three months later, (Doc. 7), the Commissioner responded, (Doc. 10), and Amanda replied, (Doc. 11).

## III.    The ALJ's Decision

In his opinion, the ALJ used the five-step evaluation process outlined above to determine whether Amanda was disabled. At step one, he determined that Amanda has not engaged "in substantial gainful activity" since April 2022—the date Amanda alleged that she became disabled. (R. at 22.) At step two, the ALJ found that Amanda had the following severe impairments: (1) migraines; (2) degenerative disc disease; (3) left ankle fracture; (4) status-post open reduction internal fixation surgery; and (5) obesity. (R. at 23). At step three, the ALJ concluded that none of those impairments met or medically equaled any of the listed impairments. (R. at 25.) Before proceeding to steps four and five, the ALJ crafted the following RFC assessment:

> [Amanda] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following non-exertional limitations. She should avoid climbing ladders, ropes or scaffolds. She should climb ramps and/or stairs, balance, stoop, kneel, crouch and/or crawl no more than occasionally. She should avoid even moderate exposure to temperature extremes. She should avoid concentrated exposure to loud or very loud environments and hazards like unprotected heights and dangerous machinery.

(R. at 25.) At step four, the ALJ found that Amanda was able to perform her past work as a cosmetics salesperson. (R. at 30.) Based on the ALJ's conclusion at step four, he determined that Amanda is not disabled. (R. at 30.)

## DISCUSSION

Amanda challenges three aspects of the ALJ's RFC assessment. First, she argues that the ALJ failed to address the sensitivity to light caused by her migraines. But the ALJ's analysis of Amanda's migraines was grounded in evidence that she successfully treated them with medication. Second, she argues that the ALJ failed to properly evaluate whether a cane was medically necessary. But Amanda did not produce the kind of evidence required to establish that restriction, so the ALJ had no choice but to conclude that a cane was not medically necessary.  And third, she argues that the ALJ failed to incorporate the side effects of her medications. Although the ALJ could have discussed the issue in more detail, his failure to do so was harmless.

## I.    The ALJ's Analysis of Amanda's Migraines

Amanda asserts that her migraines cause heightened sensitivity to both sound (phonophobia) and to light (photophobia). (Pl. Br. 8.[2]) She observes that the ALJ's RFC assessment included a limitation that she should "avoid concentrated exposure to loud . . . environments." (R. at 25.) But because the ALJ did not limit her exposure to light, Amanda insists, the Court "is left to guess why the ALJ" accounted for one but not the other. (Pl. Br. 9–10.) The Commissioner responds that the ALJ reasonably evaluated Plaintiff's migraines, that Plaintiff's own testimony undermines her

---

[2] "Pl. Br." refers to Amanda's opening brief, filed on August 6, 2025. (Doc. 7.)

argument, and that the treatment records Amanda cites to support her claim are unpersuasive. (Comm'r Br. 3–5.[3])

The RFC assessment asks what a claimant can do on "a regular and continuing basis despite limitations from [their] impairment." *Moore*, 743 F.3d at 1121. In answering that question, ALJs must review the record and "evaluate the 'intensity, persistence, and functionally limiting effects'" of the claimant's symptoms. *Schneck*, 357 F.3d at 701 (quoting SSR 96-7p).[4] The ALJ's written decision, of course, need not cite every piece of evidence. *Warnell*, 97 F.4th at 1053. But an ALJ may not ignore an "entire line of evidence" that undermines his ruling. *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) (emphasis added). The ALJ's opinion must therefore demonstrate that he considered the relevant evidence and arrived at a reasonable conclusion based on that evidence.

The ALJ's discussion of Amanda's migraines honored these principles. Indeed, a review of the ALJ's decision demonstrates that he evaluated Amanda's migraines at length. He recounted Amanda's testimony that she experiences migraines "about once per month," and that she takes monthly injections, which "really help[]." (R. at 26). He cited records confirming Amanda's frequent visits to the emergency room for her migraines. (R. at 26, 28.) And he cited a November 2022 report in which Amanda said "that her migraines were controlled" with medication. (R. at 27.) This evidence, the ALJ reasoned, reflected "overall" that Amanda has "good control over her

---

[3] "Comm'r Br." refers to the Commissioner's response brief, filed September 3, 2025. (Doc. 10.)

[4] Although Social Security Ruling 96-7p has been superseded on other grounds by SSR 16-3p, the quoted portion remains good law. *See* SSR 16-3p, 81 Fed. Reg. 14166 (Mar. 28, 2016).

migraine headaches." (R. at 28.) The ALJ also found persuasive the state-agency opinions—which limited Amanda to a reduced range of light work—in part because they were "consistent with the current record, which indicates . . . well controlled migraine headaches." (R. at 29.) The "logical bridge" here is therefore apparent: Amanda alleged that she suffers from migraines, which is corroborated by a history of emergency-room visits; but the evidence showed that she has ameliorated her symptoms with medication and treatment; therefore, Amanda's migraines do not prevent her from performing light work.

Amanda disagrees. Her principal argument is that the ALJ erred in restricting her exposure to noise—but not light—to account for her migraines. Because her migraines cause *both* noise and light sensitivity, she argues, the ALJ was required to include an analogous restriction on her exposure to light. The Court disagrees. The ALJ interpreted the evidence to show that Amanda's migraines were controlled by medication. And as the Commissioner observes, that finding was corroborated by Amanda's own hearing testimony: "[H]eadache wise I don't get a lot of migraines anymore. It's just my neck that hurts constantly." (R. at 54; *see also* R. at 26 (ALJ's opinion discussing Amanda's hearing testimony. *But see* R. at 26 (discussing Amanda's assertion that she experiences migraines once per month that "prevent her from doing anything").) Given the ALJ's finding that Amanda's migraines are under control, the particular symptoms that she experiences during a migraine are irrelevant. In other words, if Amanda does not experience migraines (because she

successfully treats them with medication), the symptoms associated with them will not meaningfully limit her ability to work regardless of what those symptoms are.

Amanda also cites several treatment records to substantiate the claim that her migraines cause light sensitivity. She argues that "every complaint of a migraine headache . . . is coupled with a reference to photophobia." (Pl. Br. 9.) For her part, the ALJ did not discuss all of those records in his opinion—as the Commissioner concedes. (*See* Comm'r Br. 5.) And (as is often true) the ALJ could certainly have discussed at greater length the records that substantiated Amanda's claim that her migraines were debilitating. But the ALJ *did* discuss several instances in which Amanda visited the emergency room and reported having a migraine. (R. at 26, 27.) He therefore did not ignore an "entire line of evidence" contrary to his ruling. *Jones v. Astrue*, 623 F.3d at 1162. This is not a case where, for example, the ALJ brushed aside any evidence of Amanda's migraines and ignored her allegations that she experienced them. Instead, he found migraines to be a severe impairment, recounted Amanda's allegations, weighed the evidence, and found that they are mostly under control. *See* 20 C.F.R. § 416.929(c)(3) (directing ALJ's to consider, among other things, treatment the claimant receives to alleviate symptoms).

In short, the ALJ relied upon evidence that a reasonable person would find supports the conclusion that Amanda's migraines did not prevent her from performing light work. *See Richardson*, 402 U.S. at 401. The substantial evidence standard is therefore met.

## II. The ALJ's Discussion of Amanda's Cane Use

Amanda next challenges the ALJ's finding that a cane was not medically necessary. She cites nine records that, in her view, demonstrate that she requires a cane "for both ambulation and balance purposes." (Pl. Br. 11–12.) Because the ALJ's analysis of Amanda's cane use was "perfunctory," she argues, a remand is required. (Pl. Br. 11.) The Commissioner responds that the ALJ properly concluded that Amanda failed to show that a cane was medically necessary. (Comm'r Br. 5–7.)

Regular use of a cane would, of course, sharply limit one's ability to work—especially in jobs that require employees to stand or walk while using both hands. But before an ALJ can include such a limitation in a claimant's RFC, the claimant must adduce "medical documentation establishing the need for a hand-held assistive device to aid in walking and standing, and describing the circumstances for which it is needed." SSR 96-9p. Mere references in the record to the claimant's use of a cane or antalgic gait are not enough. *See Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012). Instead, courts have required an "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary." *Id.* This standard is a demanding one. The fact that a physician provided a cane is not enough, *see Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010), nor is a doctor's statement that a claimant "uses a cane to walk," *Staples v. Astrue*, 329 F. App'x 189, 191–92 (10th Cir. 2009).

Amanda's evidence did not meet that standard. Although the ALJ identified one instance in which Amanda was "noted to be using a cane," he concluded that the

11

record "does not support her allegation that she requires a cane for ambulation." (R. at 28.) The evidence Amanda cites does not cast doubt on that conclusion. She notes, for example, records that reveal that she was walking slowly and had an antalgic gait, (Pl. Br. 12 (citing R. at 394, 493)), that she "arrived to the emergency room" with a cane in May 2022, (Pl. Br. 12 (citing R. at 405, 893)), and that she was diagnosed in September 2022 with decreased trunk mobility and stability, (Pl. Br. 12 (citing R. at 766–67)). None of these records, however, describe "the circumstances in which" Amanda must use a cane. SSR 96-9p. And none of them amount to an "unambiguous opinion from a physician" stating that Amanda is medically required to use a cane. *Tripp*, 489 F. App'x at 955. Accordingly, the ALJ was entitled—indeed, *required*—to conclude that a cane is not medically necessary. *See Lincoln v. Bisignano*, No. 24-2668, 2026 WL 1097737, at *3–4 (7th Cir. Apr. 23, 2026) (affirming ALJ's finding that cane was not medically necessary despite evidence that claimant "increasingly used a cane" throughout the relevant period).

Amanda faults the ALJ for not discussing the records of her mobility issues in greater detail. But because no records established that a cane was medically necessary, there was little more for the ALJ to discuss. Surely ALJs need not evaluate evidence that does not exist or ponder about alternative conclusions on different facts. Although the records Amanda cites may support the proposition that she needs a cane, the fundamental problem was not the *quantity* of evidence Amanda offered to support her cane use—it was the *kind* of evidence. It is settled that ALJs cannot "play doctor." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). That means the ALJ cannot

unilaterally find that a cane is medically necessary; only a doctor can make that determination. No doctor in Amanda's case had, so the ALJ's inquiry was at an end.

### III. Side Effects of Amanda's Medication

Amanda's final argument is that the ALJ gave short shrift to Amanda's side effects and that his failure to "conduct an individual assessment" was reversible error. The Commissioner responds that the ALJ expressly considered Amanda's testimony about her side effects but properly rejected it.

Amanda correctly observes that ALJs are instructed to consider, among other things, the "type, dosage, effectiveness, and *side effects* of any medication" that claimants are taking or have been prescribed. (Pl. Br. 15 (quoting 20 C.F.R. § 404.1529(c)(3)(iv)).) And it is of course true, as Amanda states, that the ALJ's conclusion about a claimant's side effects (or lack thereof) must be supported by substantial evidence. Here, the ALJ recounted Amanda's testimony that her pain medication makes her feel "sleepy" and sometimes requires her "to lie down." (R. at 26.) And later, he conceded that the record substantiates that testimony, at least to some degree: "This record indicates some issues with medication side effects . . . ." (R. at 28.) But the ALJ engaged in no further analysis of the side effects of Amanda's medication or their potential to limit her ability to work. And indeed, even the Commissioner implicitly concedes that the ALJ could have said more on this front. (*See* Comm'r Br. 8.)

The Commissioner urges the Court to find that the ALJ's failure to discuss side effects in more detail does not warrant reversal. (Comm'r Br. 8.) In his view, neither

of the two records that Amanda cites to substantiate her side-effect allegations "supports remanding the ALJ's decision so that the ALJ could say more" about the issue. (Comm'r Br. 8.) Amanda does not address the Commissioner's harmless-error argument in her reply brief. In any case, the Court agrees.

When a court finds that an ALJ's opinion falls short in some way, the question becomes whether the "failure constitutes a legal error requiring reversal." *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021). That question, in turn, depends on whether the court can predict with confidence that the ALJ would reach the same result on remand. *Thomas H. v. Kijakazi*, No. 3:22-cv-50331, 2023 WL 6388145, at *2 (N.D. Ill. Sept. 29, 2023). Amanda's side-effects argument rests on two treatment notes. The first is a May 30, 2023 note in which Amanda told her doctor that "she has a history of dizzy spells that are related to her medications for anxiety and chronic pain." (R. at 2388.) The other is a progress note from February 2024, where Amanda presented to the doctor "confused and disoriented"; when asked about her symptoms, she said that "this is how she acts after taking her muscle relaxer" but that she "usually falls asleep after that." (R. at 3653.)

Although the ALJ can—and should—have discussed the side effects of Amanda's medication in more detail, the treatment notes that Amanda cites do not warrant remand. That is because they *both* consist of Amanda's own reports to her providers; they are not the opinions of a physician, a pharmacist, or another medical source. What is more, the ALJ cited Amanda's hearing testimony that sometimes her medication causes her to "feel[] sleepy" and requires her to "lie down." (R. at 26.)

14

Evidently, the ALJ considered Amanda's allegations that her medications cause side effects. The notes that Amanda cites are also self-reports and thus shed no more light on the question than does her testimony itself. Because the ALJ otherwise examined both Amanda's medical records and the opinion evidence at length in reaching his RFC, (*see* R. at 25–29), the Court is confident that a discussion of those two treatment notes would not change the outcome, *see Thomas*, 2023 WL 6388145, at *2.

## CONCLUSION

IT IS THEREFORE RECOMMENDED that the ALJ's decision be affirmed. The parties have fourteen days from service of this Report and Recommendation to object to it. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). By failing to timely object, the parties will waive their right to do so. *See Goyal v. Gas Tech. Inst.,* 389 Fed. App'x 539, 543 (7th Cir. 2010).

*So recommended.*

Entered this 29th day of April 2026.

s/ Ronald L. Hanna
Ronald L. Hanna
United States Magistrate Judge